1999 Utah Ct. App. 366

**WILKINSON FAMILY FARM, LLC, a Utah limited liability company, Plaintiff and Appellant,**

v.

**Lara L. BABCOCK, and all other parties known or unknown who may claim an interest in the real property described herein, Defendant and Appellee.**

No. 981769–CA.

Court of Appeals of Utah.

Dec. 9, 1999.

Robert A. Echard, Robert Echard & Associates, Ogden, for Appellant.

Bruce A. Maak, Parr, Waddoups, Brown, Gee, Loveless, Salt Lake City, for Appellee.

Before WILKINS, P.J., and BILLINGS and DAVIS, JJ.

## OPINION

BILLINGS, Judge:

¶ 1 Plaintiff Wilkinson Family Farm, LLC (Wilkinson) appeals the trial court's ruling quieting title to a disputed piece of land in defendant, Lara Babcock (Babcock). Wilkinson asserts the trial court erred in failing to determine Wilkinson owned the property under the doctrine of boundary by acquiescence. We affirm.

## BACKGROUND

¶ 2 Wilkinson and Babcock are adjoining land owners in Morgan County, Utah.[1] Their deeds each reflect the ownership of a half section of land, with straight boundaries and ninety degree corners. The common boundary runs east to west. Babcock owns the property to the north of the section line, and Wilkinson owns the south property.

¶ 3 The disputed property is a five-acre parcel in the southeast corner of Babcock's deeded section. For over twenty years, a fence has separated that parcel from the rest of Babcock's property. The fence departs from the true boundary on an angle toward the northeast. This "slant fence" was built by Babcock's predecessors as a cattle containment fence. It was not installed to establish a boundary, nor was it in a location considered to be the boundary. The exclusive purpose of the slant fence was to keep cattle from wandering onto Wilkinson's property. Because of cliffs and gullies, it was impractical to put a fence along the true boundary.

¶ 4 Both parties and their predecessors knew the true boundary was straight along the section line. However, Wilkinson used portions of the disputed parcel for crops, and cattle grazed the entire parcel. Wilkinson "occupied" the land in this way for over twenty years. Babcock's predecessors did not interrupt nor object to such use.

¶ 5 Wilkinson initiated this action claiming ownership of the disputed parcel. Wilkinson claimed the property belonged to it based on the doctrine of boundary by acquiescence. After a two day trial, the court determined that neither the parties nor their predecessors "mutually acquiesce[d] in the slant fence as a boundary between the properties." Further, the court concluded the slant fence's purpose was "always and exclusively to contain livestock and not to establish a boundary." Therefore, the court quieted title in Babcock. Wilkinson appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 6 The sole issue on appeal is whether the trial court correctly determined that the parties had not acquiesced in the slant fence line as a boundary, the second element required to establish boundary by acquiescence. This presents a question of whether a given set of facts gives rise to a determination of acquiescence, and therefore is reviewable as a matter of law. *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994) ("The effect of a given set of facts is a question of law."). However, this legal determination is highly fact sensitive and thus the trial court has some measure of discretion. *See id.* at 938–39.

## ANALYSIS

¶ 7 Boundary by acquiescence entails four elements, all of which must be shown to

---

1. This appeal arises from a judgment of the trial court, sitting without a jury. We recite the facts in the light most favorable to the court's determi-nation. *See Interwest Constr. v. Palmer*, 923 P.2d 1350, 1352 (Utah 1996); *Van Dyke v. Chappell*, 818 P.2d 1023, 1024 (Utah 1991).

establish ownership of a disputed parcel: " '(1) occupation up to a visible line marked by monuments, fences, or buildings, (2) mutual acquiescence in the line as a boundary, (3) for a long period of time, (4) by adjoining landowners.' " *Staker v. Ainsworth*, 785 P.2d 417, 420 (Utah 1990) (quoting *Goodman v. Wilkinson*, 629 P.2d 447, 448 (Utah 1981)). The only contested element in this case is mutual acquiescence in the line as a boundary.

¶ 8 Mutual acquiescence in a line as a boundary has two requirements: that both parties recognize the specific line, and that both parties acknowledge the line as the demarcation between the properties. *See Fuoco v. Williams*, 18 Utah 2d 282, 421 P.2d 944, 947 (1966). Acquiescence does not require an explicit agreement, " 'but recognition and acquiescence must be mutual, and both parties must have knowledge of the existence of a line *as [the] boundary line.*' " *Wright v. Clissold*, 521 P.2d 1224, 1227 (Utah 1974) (emphasis added) (quoting *Fuoco*, 421 P.2d at 947).

¶ 9 Wilkinson asserts the trial court erred in considering the purpose of the fence in determining whether the parties mutually acquiesced in the fence as the boundary between their properties. We disagree. Because both parties must acknowledge a particular line to be the dividing line between them to establish boundary by acquiescence, the purpose of a fence is relevant, and in some cases may be determinative.

¶ 10 From the initial recognition of boundary by acquiescence in Utah, courts have recognized the importance of the purpose of a fence. *See Holmes v. Judge*, 31 Utah 269, 87 P. 1009, 1014 (1906). In *Holmes*, the court carefully noted that owners could claim to the true property lines beyond a fence "where it is clear that the [fence] as located was not intended as a boundary." *Id.* Utah

courts have consistently considered the purpose of a fence or other marker in determining whether parties in dispute mutually acquiesced in a fence as a boundary, typically concluding that there is no acquiescence where the fence was not intended as a boundary. *See, e.g., Grayson Roper Ltd. v. Finlinson*, 782 P.2d 467, 472 (Utah 1989) (noting no acquiescence when fence built for livestock control); *Hales v. Frakes*, 600 P.2d 556, 559 (Utah 1979) (noting fence built as livestock control, not as boundary, and purposely offset from boundary line); *Wright*, 521 P.2d at 1227 (noting fence not built as boundary but for cattle containment); *Fuoco*, 421 P.2d at 947 (stating irrigation ditch dug for convenience of owner, not intended as boundary); *Ringwood v. Bradford*, 2 Utah 2d 119, 269 P.2d 1053, 1054 (1954) (noting fence built to protect newly planted trees); *cf. Van Dyke v. Chappell*, 818 P.2d 1023, 1024 (Utah 1991) (noting boundary by acquiescence requires that parties intended fence to be the boundary).[2] Thus we conclude the trial court did not err in considering the purpose of the fence in determining there was no mutual acquiescence in the fence as the boundary between the properties.

¶ 11 Wilkinson also contends the trial court erred in considering the parties' knowledge of the location of the true boundary in determining there was no mutual acquiescence in the fence as the boundary. Wilkinson asserts the trial court has improperly reintroduced objective uncertainty as an element of boundary by acquiescence. *See Halladay v. Cluff*, 685 P.2d 500, 504–05 (Utah 1984) (adding objective uncertainty to boundary by acquiescence requirements), *overruled by Staker*, 785 P.2d at 421–24 (eliminating objective uncertainty as element of boundary by acquiescence). Wilkinson mischaracterizes the trial court's findings and conclusions.

---

**2.** Wilkinson contends that the intended purpose of a fence was relevant only after *Halladay v. Cluff*, 685 P.2d 500 (Utah 1984), introduced the element of objective uncertainty as part of boundary by acquiescence, and before *Staker*, 785 P.2d 417, removed the objective uncertainty element. However, the importance of the intended purpose of a fence has remained consistent through cases decided both before *Halladay*,

see, e.g., *Hales*, 600 P.2d at 559; *Wright*, 521 P.2d at 1226–27; *Fuoco*, 421 P.2d at 947; *Ringwood*, 269 P.2d at 1055, and after, see, e.g., *Grayson*, 782 P.2d at 472, and even after *Staker* returned to the four-element standard of boundary by acquiescence, see *Van Dyke*, 818 P.2d at 1026–27. Although Wilkinson seems to merge the two, the subjective intended purpose of a fence is not the same as objective uncertainty of a boundary.

¶ 12 Wilkinson seems to argue that *Staker* not only eliminates objective uncertainty as an element, but renders knowledge of the true boundary irrelevant. This overstates *Staker* and fails to acknowledge the underlying nature of boundary by acquiescence. The "very foundation of the doctrine is that the law *implies* that the adjoining landowners were once uncertain . . . and that the boundary was marked on the ground in settlement thereof. After the parties have for a long period of time acquiesced in that marked boundary, the law protects it." *Stratford v. Morgan*, 689 P.2d 360, 366 (Utah 1984) (Howe, J. dissenting). In contrast, "if there is no uncertainty as to the location of the true boundary line the parties may not, knowing where the true boundary line is, establish a boundary line by acquiescence at another place." *Nunley v. Walker*, 13 Utah 2d 105, 369 P.2d 117, 122 (1962).

¶ 13 Accordingly, knowledge of the true boundary is relevant to a determination of whether a party acquiesced in a particular line as the boundary. Thus, such factual knowledge is properly considered, and in fact may take the dispute out of the reach of boundary by acquiescence.[3] In sum, we agree that the parties did not acquiesce in the slant fence line as a boundary.

## CONCLUSION

¶ 14 The trial court did not err in considering the purpose of the slant fence, nor the parties' knowledge of the true boundary, in determining there was no mutual acquiescence in the slant fence as the boundary. Accordingly, we affirm the trial court's judgment quieting title in Babcock.

3. Wilkinson also claims the trial court found indolence and thus it was entitled to a presumption of ownership which the court failed to recognize. *See Carter v. Hanrath*, 885 P.2d 801, 806 (Utah Ct.App.1994), *rev'd*, 925 P.2d 960, 962 (Utah 1996). We conclude the trial court made no finding of indolence. The court, through two additional hearings concerning the drafting of findings of fact and conclusions of law, rejected the use of the term indolent. Furthermore, "[w]here there is no proof of acquiescence in the line as the boundary, there can be no boundary

¶ 15 WE CONCUR: MICHAEL J. WILKINS, Presiding Judge, and JAMES Z. DAVIS, Judge.

by acquiescence." *Hales*, 600 P.2d at 559. Courts have concluded that mere acquiescence in use, without more, is insufficient to establish boundary by acquiescence. *See, e.g., id.* ("Plaintiff's occupation to the fence without interference was not sufficient to establish defendant's acquiescence in the fence as a boundary."); *Wright*, 521 P.2d at 1227 (holding that passively permitting land use was not sufficient absent showing that both parties acknowledged line as boundary). Acquiescence in use is not equivalent to acquiescence in a boundary.