2006 UT App 168

**Thomas E. BROWN Jr. and Marilyn R. Brown, Plaintiffs and Appellants,**

v.

**Lee JORGENSEN, John Does 1–10, and other persons unknown claiming title or interest in the subject property of this action, Defendants and Appellees.**

No. 20040853–CA.

Court of Appeals of Utah.

April 27, 2006.

James C. Jenkins and Robert B. Funk, Olson & Hoggan, Logan, for Appellants.

Ray G. Martineau and Anthony R. Martineau, Salt Lake City, and David S. Cook, Bountiful, for Appellees.

Before BENCH, P.J., McHUGH and ORME, JJ.

## OPINION

BENCH, Presiding Judge:

¶ 1 Plaintiffs Thomas E. Brown Jr. and Marilyn R. Brown (the Browns) appeal the trial court's judgment rejecting their boundary by acquiescence claim and quieting title of real property to Defendant Lee Jorgensen. The Browns also appeal the award of costs, the partial denial of their motion for summary judgment, and the denial of their post-trial motion to amend their pleadings. We affirm but vacate the award of costs.

## BACKGROUND

¶ 2 The Browns own real property (the Brown Parcel) located in Summit County. The Browns took title to the Brown Parcel in 1971. However, other members of the Brown family have continuously owned the parcel since the 1940s. Jorgensen owns real property (the Jorgensen Parcel) adjacent to and to the southwest of the Brown Parcel and has maintained ownership of his parcel since 1979. The preceding owner of the Jorgensen Parcel, Tracey Land & Livestock Company, used the parcel to raise livestock.

¶ 3 Located near the northeastern border of the Jorgensen Parcel is a fence (the Fence) that runs roughly along the southern border of the Brown Parcel. Sometime between 1943 and 1946, Thomas E. Brown Sr. and other Brown family members constructed the Fence. Although some of the Fence is located on the Brown Parcel, the Fence crosses onto the Jorgensen Parcel along a hillside above an irrigation ditch. The Fence separates a strip of land of approximately seven acres from the Jorgensen Parcel. This strip of land (the Subject Property) is the subject of this litigation. Since the Fence was erected, the Brown family has used the Subject Property and periodically maintained the Fence.

¶ 4 In 1971, the Browns hired a company to prepare a site plan to construct a home on the Brown Parcel. Although the site plan identified a property line different from the Fence line, the Browns built a home on their parcel and continued to use the Subject Property. In 1994, in anticipation of selling his parcel, Jorgensen commissioned an informal survey of the Jorgensen Parcel scaled from an aerial photo. This survey indicated that the property line was not the Fence line and that the property line actually cut through the Browns' home.

¶ 5 In July 1999, Jorgensen sent a letter to the Browns demanding removal of the part of the Fence located on the Jorgensen Parcel. In response, the Browns commissioned a survey of the Brown Parcel. The results confirmed that Jorgensen's 1994 survey was erroneous as to the property line cutting through the Browns' home, but the survey correctly indicated that the Subject Property was part of the Jorgensen Parcel.

¶ 6 Thereafter, in 2001, the Browns filed an action to quiet title to the Subject Property, claiming ownership based on the doctrine of boundary by acquiescence. The trial

court[1] denied the parties' motions for summary judgment, but granted the Browns partial summary judgment, holding that they had satisfied some of the elements of the doctrine of boundary by acquiescence.

¶ 7 Trial was held on the remaining elements. After trial, the trial court found that the parties did not mutually acquiesce to the Fence as the boundary line, an essential element of the doctrine of boundary by acquiescence, and quieted title of the Subject Property to Jorgensen. The trial court also awarded court costs to Jorgensen pursuant to rule 54(d) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 54(d). The Browns now appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 The Browns assert several claims on appeal. First, the Browns argue that the trial court erred by holding that there was no mutual acquiescence in the Fence as the boundary between the Brown and Jorgensen Parcels.[2] A determination of acquiescence "is reviewable as a matter of law." *Argyle v. Jones*, 2005 UT App 346, ¶ 8, 118 P.3d 301 (quotations and citation omitted). "However, this legal determination is highly fact sensitive and thus the trial court has some measure of discretion." *Id.* (quotations and citation omitted).

¶ 9 Second, the Browns argue that the trial court should have granted summary judgment in their favor. Specifically, they contend that the trial court erred by denying their motion to strike Jorgensen's affidavit in opposition to their motion for summary judgment because the affidavit did not comply with rule 56 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 56. "A trial court's decision to grant or deny a motion for summary judgment is a legal one and will be reviewed for correctness." *Salt Lake City v.*

*Silver Fork Pipeline Corp.*, 913 P.2d 731, 733 (Utah 1995).

¶ 10 Third, the Browns argue that the trial court erred by denying their motion to amend the pleadings to include the claim of prescriptive easement. "The [trial] court's decision to allow [or deny] amendment of the pleadings is reviewed for 'abuse of discretion resulting in prejudice to the complaining party.'" *Savage v. Utah Youth Vill.*, 2004 UT 102, ¶ 9, 104 P.3d 1242 (quoting *Norman v. Arnold*, 2002 UT 81, ¶ 38, 57 P.3d 997).

¶ 11 Fourth, the Browns argue that the trial court erred in awarding costs to Jorgensen because he failed to timely file a verified memorandum of costs in violation of rule 54(d)(2) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 54(d)(2). Although the determination of the amount of allowable costs is generally within the sound discretion of the trial court, compliance with the procedure outlined in rule 54(d)(2) is mandatory and "leaves no discretion to the court; therefore, we review this decision for correctness without deference to the trial court's conclusion." *Lyon v. Burton*, 2000 UT 19, ¶ 76, 5 P.3d 616, *modified on other grounds*, 2000 UT 55, 5 P.3d 616.

¶ 12 Fifth, the Browns argue that the trial court's judgment is overly broad in that it purports to preclude future claims against the Subject Property and that the judgment is therefore incompatible with the doctrine of res judicata. The issue of "whether res judicata bars an action presents a question of law[,] which we review for correctness." *Massey v. Board of Trs. of the Ogden Area Cmty. Action Comm., Inc.*, 2004 UT App 27, ¶ 5, 86 P.3d 120 (alteration in original) (quotations and citation omitted).

---

1. Judge Robert K. Hilder presided over and decided both parties' motions for summary judgment. Later, Judge Bruce C. Lubeck presided over the bench trial and issued final judgment in this matter. For ease of reference, we refer to both of the judges as "the trial court."

2. The Browns also argue that the trial court erred by finding that the Browns did not occupy the Subject Property "up to a *visible line* marked by monuments, fences, or buildings"—the first

element of boundary by acquiescence. *Argyle v. Jones*, 2005 UT App 346, ¶ 10, 118 P.3d 301 (emphasis added) (quotations and citation omitted). We note that the trial court actually found that although "various points [along the Fence] may have been leaning down or covered by sagebrush in places[,] ... the [F]ence has remained observable and open since the mid 1940s." As a result, we need not address this argument.

## ANALYSIS

### I. Mutual Acquiescence

¶ 13 The Browns argue that the trial court erred in concluding that "[t]he [F]ence was not intended as a boundary line demarcating the [parcels]" and that "[t]here was no mutual acquiescence in the open boundary line of the [F]ence." In support of their argument, the Browns assert that Jorgensen did not object to the Fence until several years after he acquired his parcel, that he treated the Fence as the boundary by never occupying any part of the Subject Property, and that he acquiesced to the Fence as the boundary line via his silence.

¶ 14 The party seeking to establish boundary by acquiescence must prove "(i) occupation up to a visible line marked by monuments, fences, or buildings, (ii) mutual acquiescence in the line as a boundary, (iii) for a long period of time, (iv) by adjoining landowners." *RHN Corp. v. Veibell*, 2004 UT 60, ¶ 23, 96 P.3d 935 (quotations and citation omitted). " 'Under the doctrine of boundary by acquiescence, the party attempting to establish a particular line as the boundary between properties [has the burden to] establish that the parties mutually acquiesced in the line as separating the properties.' " *Id.* at ¶ 24 (quoting *Ault v. Holden*, 2002 UT 33, ¶ 18, 44 P.3d 781). The Utah Supreme Court has further defined, for purposes of this doctrine, that "[t]o acquiesce means to 'recognize and treat an observable line, such as a fence, as the boundary dividing the owner's property from the adjacent landowner's property.' " *Id.* (quoting *Ault*, 2002 UT 33 at ¶ 18, 44 P.3d 781). Thus, determining acquiescence is a "highly fact-dependent question and acquiescence, or recognition, may be tacit and inferred from evidence, i.e., the landowner's actions with respect to a particular line may evidence the landowner impliedly consents, or acquiesces, in that line as the demarcation between the properties." *Id.* (quotations and citations omitted).

¶ 15 Various landowner activities may provide evidence of acquiescence in a visible line as a boundary, such as "[o]ccupation up to, but never over, the line,"· or "silence, or the failure of a party to object to a line as a boundary." *Id.* at ¶ 25. Although acquiescence in a boundary line may occur through a party's silence or failure to object and does not require an explicit agreement, "*recognition and acquiescence must be mutual*, and both parties must have knowledge of the existence of a line as [the] boundary line." *Argyle v. Jones*, 2005 UT App 346, ¶ 11, 118 P.3d 301 (emphasis added) (alteration in original) (quotations and citations omitted).

¶ 16 In the instant matter, although the Browns subjectively believed that the Fence was the property line, they never actually communicated their belief to Jorgensen, either by word or action. Therefore, there was no "actual acknowledgment ... that the parties treat the [F]ence as the common boundary." Moreover, " '[t]he mere fact that a fence happens to be put up and neither party does anything about it for a long period of time will not establish it as the true boundary.' " *Argyle*, 2005 UT App 346 at ¶ 13, 118 P.3d 301 (alteration in original) (quoting *Glenn v. Whitney*, 116 Utah 267, 209 P.2d 257, 260 (1949)); *see also Hales v. Frakes*, 600 P.2d 556, 559 (Utah 1979) ("[P]laintiff's occupation to the fence without interference was not sufficient to establish defendant's acquiescence in the fence as a boundary."). Furthermore, the trial court found that Jorgensen's actions in commissioning an informal survey of his parcel "show[ed] an unwillingness to acknowledge the [F]ence as the boundary," and that his unwillingness was factually "sufficient to defeat the doctrine." Because " 'there is no proof of acquiescence in the line as the boundary, there can be no boundary by acquiescence.' " *Wilkinson Family Farm, LLC v. Babcock*, 1999 UT App 366, ¶ 13 n. 3, 993 P.2d 229 (quoting *Hales*, 600 P.2d at 559).

¶ 17 Additionally, "[f]rom the initial recognition of boundary by acquiescence in Utah, courts have recognized the importance of the purpose of a fence." *Id.* at ¶ 10. In this matter, the trial court found that Jorgensen's predecessors "ran livestock on the land" and that the Browns and their predecessors also "used [their] property to graze cattle and sheep," among other uses. The trial court

concluded that "the purpose of the [F]ence was to contain livestock and keep grazing livestock of [Jorgensen's] predecessor owner from the Brown property" and that "[t]he [F]ence was not intended as a boundary line demarcating the property."

¶ 18 Because acquiescence is such a highly fact-dependent determination, we hold that the trial court did not err in concluding that the parties did not mutually acquiesce to the Fence as the boundary. As a result, the Browns failed to establish all the necessary elements of boundary by acquiescence.

## II. Motion to Strike Jorgensen's Affidavit

 ¶ 19 The trial court granted the Browns partial summary judgment, ruling as a matter of law that they satisfied some of the elements of the doctrine of boundary by acquiescence. The Browns claim that their motion for summary judgment should have been granted outright because the trial court erred in admitting Jorgensen's affidavit included in his opposition to the motion for summary judgment. The Browns argue that Jorgensen's affidavit contains inadmissible evidence including his "personal opinions, conclusions, and speculations, as opposed to allowable specific statements of fact as mandated by the Utah Rules [of Civil Procedure]." *See* Utah R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge[ and] shall set forth such facts as would be admissible in evidence...."). "[T]he interpretation of a rule of procedure is a question of law that we review for correctness." *Oliphant v. Estate of Brunetti*, 2002 UT App 375, ¶ 8, 64 P.3d 587 (alteration in original) (quotations and citation omitted).

 ¶ 20 The "major purpose of summary judgment is to avoid unnecessary trial by allowing the parties to pierce the pleadings to determine whether there is a genuine issue to present to the fact finder." *Reagan Outdoor Adver., Inc. v. Lundgren*, 692 P.2d 776, 779 (Utah 1984). "In accordance with this purpose, specific facts are required to show whether there is a genuine issue for trial." *Id.* "[A]n affidavit is simply a method of placing evidence of a fact before the court." *Murdock v. Springville Mun. Corp.*,

1999 UT 39, ¶ 25, 982 P.2d 65. Affidavits submitted in support or in opposition to a motion for summary judgment must be based on the personal knowledge of the affiant and may not be considered by the trial court if largely based on unsubstantiated opinions, conjecture, and beliefs. *See Treloggan v. Treloggan*, 699 P.2d 747, 748 (Utah 1985) ("Under [rule] 56(e), an affidavit [based] on information and belief is insufficient to provoke a genuine issue of fact."); *Norton v. Blackham*, 669 P.2d 857, 859 (Utah 1983) ("[S]tatements in [an] affidavit [that] are largely conclusory ... would not be admissible in evidence and may not be considered on summary judgment."); *Walker v. Rocky Mountain Rec. Corp.*, 29 Utah 2d 274, 508 P.2d 538, 542 (1973) ("Statements made merely on information and belief will be disregarded. Hearsay and opinion testimony that would not be admissible if testified to at the trial may not properly be set forth in an affidavit.").

 ¶ 21 Although Jorgensen's affidavit does contain inadmissible hearsay, which appears to have been properly disregarded, the affidavit also contains statements from Jorgensen's personal knowledge concerning his recollection of events regarding the Subject Property that dispute the Browns' contention that the parties acquiesced to the Fence as the boundary line. Thus, Jorgensen's affidavit does not, as a matter of law, violate rule 56(e). *See* Utah R. Civ. P. 56(e).

 ¶ 22 Furthermore, as disputed issues of fact existed at the time the trial court considered the motion for summary judgment and as determining acquiescence is a highly fact-dependent question, the trial court did not err in partially denying the Browns' motion for summary judgment. *See* Utah R. Civ. P. 56(c) (stating that a motion for summary judgment is only granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law").

## III. Rule 15(b) Motion to Amend Pleadings

¶ 23 The Browns also argue that the trial court erred by denying their rule 15(b) mo-

tion to amend the pleadings to include a claim of prescriptive easement, even though their motion to amend was filed over two months after the trial concluded. *See* Utah R. Civ. P. 15(b). The Browns argue that each of the elements necessary for the claim of prescriptive easement was established at trial, even though they never mentioned or implied that they were seeking relief under the doctrine of prescriptive easement, and that Jorgensen impliedly consented to trying the claim of prescriptive easement.

¶ 24 The trial court determined that it did not "view [the] trial as one where the parties agreed, explicitly or implicitly, on a trial concerning prescriptive easement or any other cause of action other than title under boundary by acquiescence." The trial court noted "[t]hat the phrase 'prescriptive easement' was not [even] utter[ed] during the trial ... and it certainly was not briefed [ ]or argue[d], and the court did not make its decision based on [that] doctrine." The trial court denied the Browns' motion and concluded that the Browns had ample opportunity to amend their pleadings much earlier and that "it would be fundamentally unfair to allow [the Browns] to now seek recovery of a different sort[ and] on a different cause of action."

¶ 25 Although some of the elements of the two doctrines overlap, the critical element of adverse use, under prescriptive easement, was not argued or presented to the trial court. Throughout the trial, the Browns claimed that the parties mutually acquiesced or recognized the Fence as the boundary, not that the Browns were notorious and adverse in their use of the Subject Property.[3] As a result, Jorgensen could not expressly or impliedly consent, under rule 15, to trying the claim of prescriptive easement. *See* Utah R. Civ. P. 15.

¶ 26 While rule 15 "permits the amendment of pleadings by leave of court, and the rule is to be liberally construed so as to further the interests of justice[,] ... the rule is to be applied with less liberality when the amendments are proposed during or after trial, rather than before trial." *Girard v. Appleby*, 660 P.2d 245, 248 (Utah 1983) (footnote omitted), *overruled on other grounds by Meadowbrook, LLC v. Flower*, 959 P.2d 115 (Utah 1998); *see also* Utah R. Civ. P. 15. "In any event, the granting of leave to amend is a matter which lies within the broad discretion of the court...." *Id.* We conclude that the trial court did not abuse its discretion in denying the Browns' motion to amend their pleadings, which motion was made over two months after the trial concluded.

## IV. Memorandum of Costs

¶ 27 "Rule 54(d) provides that costs are awarded as of course to a prevailing party and that the trial court is to assess costs based on a verified memorandum of costs, which must be filed by the successful party within five days after entry of judgment." *Valcarce v. Fitzgerald*, 961 P.2d 305, 318 (Utah 1998); *see also* Utah R. Civ. P. 54(d). The Browns argue that Jorgensen is not entitled to an award of costs because a verified memorandum was not filed within the prescribed time frame. *See* Utah R. Civ. P. 54(d). We agree. Because "costs are allowed only if the requisite memorandum is filed within five days of the judgment[,] ... the award [of costs] must be deleted from the judgment." *Valcarce*, 961 P.2d at 318.

## V. Res Judicata

¶ 28 In its judgment, the trial court stated that

[f]ee simple to the [Subject Property] should be and the same is hereby quieted [to Jorgensen] against and free and clear

---

3. In fact, prescriptive easement and boundary by acquiescence are antithetical doctrines. The former requires notorious and adverse use while the latter requires mutual recognition and acquiescence to the boundary line. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 311 (Utah 1998) ("A party claiming a prescriptive easement must prove that his use of another's land was open, continuous, and *adverse under a claim of right* for a period of

twenty years." (emphasis added)); *RHN Corp. v. Veibell*, 2004 UT 60,¶ 23, 96 P.3d 935 ("The elements of boundary by acquiescence are (i) occupation up to a visible line marked by monuments, fences, or buildings, (ii) *mutual acquiescence in the line as a boundary*, (iii) for a long period of time, (iv) by adjoining landowners." (emphasis added)).

of all boundary by acquiescence and all other claims of [the Browns] and of all claims of all other persons who may claim, by and through or under [the Browns] or either of them.

The Browns argue that this language of the trial court's judgment is overly broad in that it purports to preclude future claims against the Subject Property and that the judgment is therefore incompatible with the doctrine of res judicata. "The doctrine of res judicata serves the important policy of preventing previously litigated issues from being relitigated. Res judicata encompasses two distinct doctrines: claim preclusion and issue preclusion." *Snyder v. Murray City Corp.*, 2003 UT 13, ¶ 33, 73 P.3d 325 (quotations and citations omitted). The Browns argue that the trial court's decision is contrary to the doctrine of claim preclusion because the decision "purports to adjudicate all future claims of the Browns, as well as all future claims of all other persons who may claim by, and through the Browns."[4] We disagree.

¶ 29 "Generally, claim preclusion bars a party from prosecuting in a subsequent action a claim that has been fully litigated previously." *Id.* at ¶ 34 (quotations and citations omitted). Although "[p]reclusion advances judicial economy by preventing the unnecessary relitigation of claims and issues[,] ... due process concerns are present ... when the party sought to be precluded was not an actual party in the first lawsuit." *Brigham Young Univ. v. Tremco Consultants, Inc.*, 2005 UT 19, ¶ 28, 110 P.3d 678 (quotations and citations omitted). "Therefore, courts must ensure that the relationship between the party to the original suit and the party sought to be precluded in the later suit is sufficiently close to justify preclusion." *Id.* (quotations and citation omitted).

¶ 30 Here, we are not presented with a subsequent suit seeking preclusion against a party concerning the claims in this matter. Any argument concerning future hypothetical parties and claims may be presented to the trial court only when ripe and in their own due course. A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *see also Kowalski v. Tesmer*, 543 U.S. 125, 129, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) (holding that attorneys lack standing to assert the rights of hypothetical indigent defendants); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (stating that the core component of standing requires, among other things, that "the plaintiff must have suffered an 'injury in fact' " and that the injury is "actual or imminent, not conjectural or hypothetical" (quotations and citation omitted)).

¶ 31 We conclude that the language used by the trial court in its decision is effective against the parties and their claims to title of the Subject Property. The trial court's judgment does not preclude nonparties from making their own claims against the Subject Property or Jorgensen. Nor does the judgment violate the doctrine of res judicata.

## CONCLUSION

¶ 32 We hold that the trial court did not err in concluding that the parties did not mutually acquiesce to the Fence as the boundary line. The Browns have therefore failed to establish all the necessary elements of boundary by acquiescence. We hold that Jorgensen's affidavit does not, as a matter of law, violate rule 56 and that the trial court did not err in denying part of the Browns' motion for summary judgment. Furthermore, we conclude that the trial court did not abuse its discretion in denying the Browns' motion to amend their pleadings. Because Jorgensen failed to file a timely verified memorandum of costs, the award of costs is

---

4. To assert the doctrine of claim preclusion, the party seeking preclusion must establish three elements:

First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.

*Snyder v. Murray City Corp.*, 2003 UT 13, ¶ 34, 73 P.3d 325 (quotations and citations omitted).

hereby deleted from the judgment. Additionally, we hold that the Browns' argument of claim preclusion under the doctrine of res judicata is without merit.

¶ 33 Accordingly, we affirm the trial court's judgment, but vacate the award of costs.

¶ 34 I CONCUR: CAROLYN B. McHUGH, Judge.

¶ 35 I CONCUR, EXCEPT THAT AS TO SECTION I, I CONCUR ONLY IN THE RESULT: GREGORY K. ORME, Judge.